Good morning, everyone, and welcome to the Ninth Circuit. I understand we have some visitors today. Yes, I'd like to introduce two of my colleagues from Japan who are here getting their master's degree and will be looking at how we do appellate work and trial court today in the United States. So I could ask my two colleagues to stand. These are two very, very fine judges from Japan. Thank you very much for coming and visiting with us. We'd like to welcome you here today. We'll take the cases in the order on the day sheet. The first case for argument is Denys Honcharov v. William Barr. Good morning, Your Honors. My name is James Todd Bennett, and I'm appearing on behalf of the petitioner Denys Honcharov, and I'd like to reserve two minutes for rebuttal. Please watch the clock. Thank you. First issue I'd like to address would be actually the Convention Against Torture claim and the decision on that. Substantial evidence doesn't support this particular decision by the Court of Immigration Appeals. As we all know, the elements he has to prove is acquiescence by a public official. That's not an issue here. That appears to have been more or less conceded. And the standard we apply is more likely than not he'd be subject to torture if he was returned in the future to the Ukraine. The major problem here is when we look at the factors and the Board of Immigration Appeals analysis of those factors. The first factor is country conditions, and basically the Board of Immigration Appeals admits there's an extensive record, just as the immigration judge does, but they don't really engage with it. It is something that he can relocate on. In other words, if he comes back to the Ukraine, time has attenuated this claim so much that he would not have a problem going back. Secondly, is there evidence of past torture? Yes. I think that's unequivocal on the record as well. But the same issue is raised as to an attenuated claim. Finally. So he left Ukraine 10 years ago, and he's not been contacted by any member of the gang except for there was an anecdotal report that one of his friends was asked about his whereabouts. So he has to show that it was more probable than not that he would be tortured on account of some ground if he returned to the Ukraine. So other than the anecdotal report, is there any evidence of that? On this record, no, Your Honor. The problem with that particular position is that he is now in the United States, has been for the past nine-plus years, has not been contacted by the Samoa organization at all during that point. There has been some inquiries about him, as the Court notes, in the Ukraine, but no actual, you know, where are you, what are you doing, that kind of inquiry. And I must note, as the Court knows, that's a double hearsay statement by someone who went. However, the attenuation of the claim is not the issue. When you look at the totality of the circumstances of this case, you have a situation where he is subject, he is intimately aware of what this organization is doing. So he was a wealthy businessman, and so they wanted his money and to get his help with their schemes, is my understanding. Isn't that his testimony? He was a wealthy businessman, and he was paying protection money. They wanted his money. That is true, but he's also being integrated into their scheme, or they're trying to integrate him into it. So they were trying to get him to help them, and he ultimately refused and came to the United States. Exactly. Is that right? It's not day yet. So is there any evidence that if he came back and say he wasn't a businessman or he wasn't in their area, that they would persecute him in some way or torture him in some way? Well, I think under the test, we have the totality of the facts and all of the issues. No one factor under the Convention Against Torture for this claim would be dispositive. I think that's clear circuit law under Maldonado. So when we look at this totality of the circumstances, we need to also look at the past persecution issues. Excuse me, past torture issues, pardon me. And those past torture issues are extreme. There's a rape of his wife. He wasn't injured, I understand. His testimony was he wasn't injured or seriously injured at that time. I think on that occasion, a knife was jabbed into his chest. It said cut into his chest. I don't know about stabbed into his chest. It's a little vague about the extent of the injury. But his wife was deemed credible, and she was raped. And I take your point. But it seems to me to follow up on Judge Acuda's questions, there are two problems from my perspective. One is on account of, it seems to be the nexus for purposes of the withholding claim, is that they were, whatever he endured, it was because they wanted to shake him down for money, basically, if I could say that colloquially. And then the second problem for the CAC claim is the extent to which he could show this would probably happen again. True. But when you look at the totality, I need to go back to the totality of the facts here. This organization, he's intimately aware of what they're doing. So forgive me, but are you now talking about, I want to get out of your way, but are you talking now about the CAC claim or the withholding claim? CAC claim. Okay. So for CAC, you don't have to show on it? Okay. Go ahead. Right. And so in terms of the CAC claim, he's intimately aware of what they're doing. He can testify as to what they're doing. In fact, even for us What they did, you mean? I'm sorry? What they did 10 years ago. When you say what they're doing, that's Judge Acuda's other question. Is there any more recent information, or are you just speaking now about what he knew at the time? Not on this record, Your Honor. So he has to show a particularized risk. That's what our case law says. He has to persuade the IHA that there's a particularized risk to him that should he go back 10 years later to any area in the Ukraine, that this gang, for whatever reason, will come after him. And you indicated that other than the anecdotal report that they were looking for him, there is no evidence supporting that. Well, that is essentially a relocation argument, which dubs him. No. It's in part because he can go to other places in the Ukraine. But it's in part that there's no evidence saying when he goes back 10 years later, the gang will still be looking for him, particularly if he doesn't have money at that time. I guess if he has money, maybe there's some gang somewhere will look for him. I understand, Your Honor. However, again, I think this case has to be looked at the totality of the circumstances. These people have a standing operation as far as we know at this point. Is there evidence about the Samoha gang in particular that's continuing to operate? I'm just not sure. I didn't look for that. There is no direct evidence on anything after the hearing in 2012. Isn't your problem that there's been determination by the trial court and an appellate body? And under our law, we can't touch that and we're compelled to find differently. This isn't the first time that this claim has been made. And so it's a pretty heavy burden to say at this level, from the appellate level, that we feel compelled to go a different direction than the board and the hearing officer. How do you argue that we're compelled to? That's a pretty heavy burden, but that's what you have to show to get relief. Yes, Your Honor. But, again, we have to look. No one factor in this Catt claim is dispositive. And when you weigh all of the factors involved, I think, ultimately, you've got something that is not supported by substantial evidence. I'd really like to just touch on one other issue before my time's about up. Secondly, this case needs to be remanded on both the asylum claim and the Catt claim for different reasons, but the reason it needs to be remanded is because BIA, in making its decision, is deciding he's credible on appeal without any art, basically, credible, and deciding that he is not only credible but also has an asylum claim. That changes the whole picture of this case. That requires a remand because they can't make de novo findings on review. They admit they can't. They've got two regulations that apply to that, and yet they sit here and make some determinations which essentially compel a motion to remand for hearing on both the asylum claim and the Convention Against Torture claim. You have just a few seconds left. Do you want to save them for rebuttal? Thank you, Your Honor. Thank you. Good morning. John Williams on behalf of the government. Could I interrupt you at the very beginning just to make sure we get this covered? Okay. We have before us, it seems to me, an issue of first impression. I'd like to get your view on it. In this case, the board would not hear an issue. The board did not allow a new issue to be raised at the appellate level. The circuits across the United States, from my research, have said that the board does not need to do so. That is, it doesn't have to have a new issue raised. But we in this circuit have not made that determination. So I'd like to have your view, because if I'm correct on this, and you can tell me where I'm wrong, that we will have to make a determination in this case as to whether or not the board's policy that they've used here and elsewhere, and I'm not being critical of it, that you cannot raise a new issue on appeal. It has to go back to the hearing officer. Your Honor, I believe you're speaking directly to the social groups that were proposed by the petitioner. And it's the government's contention that those formulations of the social groups have to be delineated before the immigration judge and cannot then be reformulated on appeal to the board. And we've cited, as you mentioned, several other circuits. Out-of-circuit cases. But we haven't decided that issue yet. That's correct, Your Honor. And we would be asking the court for the reasons that have been espoused not only in the other circuits, but in the recent case of the board that came out in a matter of WIC. And to back up as to that issue, the immigration judge in this case asked what the social groups were, and they were very clearly defined before the immigration judge, and that is that they were Ukrainian businessmen and witness victims to crimes. And those two groups were not proposed in the asylum application. So there were no social groups initially proposed in the asylum application. You had those two social groups that were proposed during the immigration judge's hearing. And then in the notice of appeal, the petitioner then gave an elongated new social group proposal, which was Ukrainian businesses targeted for and subject to extortion, who thereafter refused to cooperate, thereby becoming the equivalent of a whistleblower in the eyes of the persecutor. We believe that the petitioner has not challenged that reformulation in his opening brief, so he's actually waived that reformulation. And you're relying on the BIA's – the BIA already has a published opinion on this, or has a matter of WIC. Yes. And you're relying on that? Yes. Yes. Yes. Okay. Is there any statutory or regulatory basis for this appellate waiver rule? I know the regulation that says the BIA can't find facts, but that's not quite the same as saying you couldn't raise a legal issue or a mixed question of law and fact for the first time at the appellate before the BIA. Is there any statutory or regulatory hook for this rule? Well, we're looking to the board's interpretation and holdings in the past that the issue was waived, because it wasn't delineated before the immigration judge. So your answer is no? No. This is just the BIA determining its own procedures? There have been deference that has been given and other waiver issues, but yes, this is the board has established in this particular area where one has tried to reformulate social groups that they're not going to because other law, there's other cases that talk about the fact that you have factual determinations that come in, as this court has indicated. You might. You might have factual determinations. What about a reformulation where a factual determination is not necessary? In other words, I guess what I'm really trying to ask, I don't want to take up all your time, but is the rule that the BIA has adopted here a rule that it need not consider a new formulation or that it may not? That it need not. All right. And your position is that that's a matter of the BIA's own decision about how it's going to operate, is that right? Yes. All right. So this, the petitioner has actually waived the challenge to the reformulation, but I understand that the court has not, this circuit has not, as Judge Wallace has mentioned, has not determined squarely on that issue. My research indicates that every other circuit that has determined it has gone the same direction, the way the board suggests here. Yes. Has there been any change in that, any other circuits that have gone the other direction? Not to the government's knowledge. Thank you, Your Honor. Counsel, in this case, is there any showing of nexus that this was this harm, assuming that it rises to the level of persecution for the sake of a hypothetical? Is there any showing that this was on account of anything other than a profit-driven criminal motive? No. No. So that would leave the cat claim, right? That's correct. Is your position on the cat claim what? Is it that it's not likely to occur in the future? Well, that's part of it. I mean, the petitioner failed to meet his burden of proving that he is likely to be tortured by or with the acquiescence of the Ukrainian government. There's almost no evidence that the Samoa men have sought the petitioner since his departure from Ukraine, and we have that he actually arrived in the United States in 2004. So it would be almost 15 years. He's no longer a businessman. Upon his arrival in the United States, he is no longer practiced as a businessman. There's no requirement that the petitioner return to his business activities upon his return to the Ukraine. There's no evidence that the petitioner will be targeted for torture upon his return. And in the petitioner's brief, he makes no argument and cites no record evidence compelling the conclusion that he is likely to be tortured by or with the acquiescence of the Ukrainian government. This case, while the facts are sympathetic and unfortunate, in the end, the petitioner was – it boils down to him being a victim of general violence, for which this court has found is insufficient to demonstrate asylum eligibility. And having not demonstrated asylum eligibility, it's the government's position that he necessarily failed to meet the higher standard for withholding and, as we just presented, did not meet the – has not compelled the conclusion that he would face torture in this matter. So it would be the government's position that the petitioner has not presented compelling evidence to this court to overturn the board's decision in any manner. And the government would ask that, therefore, that this court deny the petition. If there's no further questions. Apparently not. Thank you. Great. Thank you. Yes, Your Honors. In my 19 seconds, first of all, I would note that the oil has waived the political opinion grounds because they didn't raise it in their brief. So that issue, as far as persecution on the basis of political opinion, that has not been answered. Number two, real quick, he works as a contractor now, and that's clear on the record. Secondly, on remand, this issue can be resolved because of the failure of the board to follow its own regulations. The issue can be resolved as to political – the political asylum claim. And then finally, that's it. Thank you. All right. Thank you. The case of Dennis Huntsgrove v. Barr is submitted.
judges: Wallace, Ikuta, Christen